IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TOMMASINA L. M., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:19-cv-711-K-BN |
| | § | |
| ANDREW SAUL, Commissioner of | § | |
| Social Security, | § | |
| | § | |
| Defendant. | § | |

# FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff Tommasina L. M. seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons explained below, the hearing decision should be affirmed.

## Background

Plaintiff alleges that she is disabled as a result of congestive heart failure, knee problems, obesity and depression. After her applications for supplemental security income ("SSI") benefits was denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). That hearing was held on February 1, 2018. *See* Dkt. No. 11-1 at 33-63. At the time of the hearing, Plaintiff was 46 years old. She is a high school graduate and has past work experience as a behavior intervention associate and teacher's aide. Plaintiff has not engaged in substantial gainful activity since March 11, 2016.

The ALJ found that Plaintiff was not disabled and therefore not entitled to SSI benefits. *See id.* at 19-28. Although the medical evidence established that Plaintiff suffered from obesity, congestive heart failure, dysfunction of major joint (left knee), and affective disorder, the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. The ALJ further determined that Plaintiff had the residual functional capacity to perform the full range of sedentary work, but could not return to her past relevant employment. Relying on a vocational expert's testimony, the ALJ found that Plaintiff was capable of working as a telephone information clerk, semi-conductor bonder, and addresser – jobs that exist in significant numbers in the national economy.

Plaintiff appealed that decision to the Appeals Council. The Council affirmed.

Plaintiff then filed this action in federal district court. Plaintiff argues that the ALJ committed reversible error by : (1) determining that Plaintiff did not meet a listing at Step Three without providing any explanation of why he made the adverse determination; and (2) assessing a residual functional capacity that is not supported by substantial evidence.

The undersigned concludes that the hearing decision should be affirmed in all respects.

## Legal Standards

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether Commissioner applied the proper legal standards to evaluate the

evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Copeland*, 771 F.3d at 923. The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"In order to qualify for disability insurance benefits or [supplemental security income], a claimant must suffer from a disability." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)). A disabled worker is entitled to monthly social security benefits if certain conditions are met. *See* 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued

-3-

period of 12 months. *See id.* § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

"In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007).

The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *See Copeland*, 771 F.3d at 923; *Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Copeland*, 771 F.3d at 923; *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective

evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

**Analysis**

I.   The ALJ's Step Three determination is erroneous but not prejudicial.

Plaintiff contends that the ALJ erred by concluding that Plaintiff did not meet the medical listing for chronic heart failure without providing any explanation of why he made the adverse determination. The undersigned agrees.

At Step Three of the evaluation process, the ALJ compares the claimant's impairments with impairments considered severe enough to disable an individual. *See Loza v. Apfel*, 219 F.3d 378, 390 (5th Cir. 2000). Often referred to as "the listings," the impairments are listed in Appendix 1 of the regulations. *See* 20 C.F.R. Part 404, Subpart P, app. 1. When an ALJ's Step Three determination is at issue, the reviewing court must (1) determine whether the ALJ supported the Step Three determination with a discussion of the relevant evidence and, if he failed to do so, (2) determine whether the ALJ's error was harmless. *See Cadzow v. Colvin*, No. 5:12-cv-225-C, 2013 WL 5585936, at *4 (N.D. Tex. Oct. 10, 2013) (citing *Audler v. Astrue*, 501 F.3d 446, 449 (5th Cir. 2007). An error is "harmless" when it does not compromise the ALJ's ultimate conclusion. *See id.* (citing *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988)). But, if the uncontroverted evidence suggests that the claimant's impairments meet the requirements of a listing, the ALJ's failure to provide the basis for his Step Three decision is error that requires remand. *See id.* (citing *Audler*, 501 F.3d at 449).

Here, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in the social security regulations. *See* Dkt. No. 11-1 at 21. The ALJ then stated that

> [t]he signs, symptoms and history of treatment presented in the evidence of record are inconsistent with the degree of pain and/or functional limitation that is required to meet or equal the criteria set forth in Medical Listing 1.00, musculoskeletal systems, 4.02, chronic heart failure, and 12.04, depressive, bipolar and related disorders, or any other Medical Listing."

*Id.* at 21-22.

The ALJ discussed the evidence and explained why he concluded that Plaintiff did not meet Listing 12.04. *See id.* But he did neither as to Listing 4.02. *See id.* "Although the ALJ is not always required to do an exhaustive point-by-point discussion," the ALJ was required to discuss the evidence offered in support of Plaintiff's claim for disability as the result of congestive heart failure and explain why he concluded that it was not disabling. *Audler*, 501 F.3d at 448. The ALJ's failure to analyze Plaintiff's congestive heart disease and the available evidence under the requirements of Listing 4.02 was error. *See id.*; *Warren v. Colvin*, No. 3:14-cv-1038-BN, 2014 WL 7059489, at * 4 (N.D. Tex. Dec. 15, 2014).

But this error only warrants reversal if Plaintiff's "substantial rights" were affected. *See Audler*, 501 F.3d at 448. A claimant's substantial rights are affected where the claimant "would appear to have met her burden of demonstrating that she meets the Listing requirements for" Section 4.02. *Id.* at 449. In *Audler*, the United States Court of Appeals for the Fifth Circuit reversed because the record contained medical reports with uncontroverted findings that, if accepted by the ALJ, would have satisfied the criteria for meeting the listing's requirements. *See id.* at 448-49.

Plaintiff contends that she meets Listing 4.02 under the criteria that require the "medically documented presence" of "ejection fraction of 30 percent or less during a period of stability" resulting in

> persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living in

>an individual for whom [a medical consultant], preferably one experienced in the care of patients with cardiovascular disease, has concluded that the performance of an exercise test would present a significant risk to the individual.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.02(A)(1) and (B)(1). "For a claimant to show that [her] impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original).

Plaintiff had two echocardiograms demonstrating ejection fractions of 20% and 22%. *See* Dkt. No. 11-1 at 366, 405. But no doctor concluded that the performance of an exercise test would present a significant risk to Plaintiff. *See id.* at 314-17, 336, 348-426, 451-462, 476-489, 491-496. Thus, Plaintiff's impairment does not meet all of the criteria of Listing 4.02.

The evidence is also insufficient to show consistent satisfaction of Listing 4.02's criteria over a period that lasts or is expected to last at least 12 months. There are three ejection fractions in the medical evidence: in September 2015 Plaintiff had an ejection fraction of 40%; in January 2017 she had an ejection fraction of 20%; and in June 2017 she had an ejection fraction of 22%. These intermittent ejection fraction findings are insufficient to satisfy Listing 4.02. *See Wyer v. Comm'r of Soc. Sec. Admin.*, No. 13-201-JWD-RLB, 2015 WL 589738, at *6 (M.D. La. Feb.11, 2015).

The criteria in the Listings are designed to be "demanding and stringent." *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir.1994). This is because the Listings "were designed

to operate as a presumption of disability that makes further inquiry unnecessary." *Sullivan*, 493 U.S. at 532.

Because Plaintiff failed to show consistent satisfaction of the Listing's criteria over a period that lasts or is expected to last at least 12 months, *see Wyre*, 2015 WL 589738, at *6, she has failed to meet the heavy burden to show that the ALJ's determination at Step Three was not supported by substantial evidence. And so the undersigned concludes that the ALJ's error was not prejudicial.

II.     The ALJ's RFC finding is supported by substantial evidence.

Plaintiff contends that the ALJ's RFC finding is not supported by substantial evidence because the ALJ failed to consider objective evidence demonstrating the severity of her congestive heart failure. *See* Dkt. No. 14 at 9-11. The undersigned disagrees.

When determining a claimant's RFC, the ALJ will consider the limiting effects of all of the claimant's impairments, even those that are not severe. *See* 20 C.F.R. § 404.1545(e). The RFC is an assessment, based on all of the relevant evidence, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite her impairments. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). The RFC refers to the most that a claimant is able to do despite her physical and mental limitations. *See* 20 C.F.R. §§ 404.1545(a); 416.945(a). The RFC is considered by the ALJ, along with the claimant's age, education, and work

experience, in determining whether a claimant can work. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The ALJ found that Plaintiff had the severe impairments of obesity, congestive heart failure, dysfunction of major joint (left knee), and affective disorder. *See* No.11-1 at 21.

The ALJ then found that Plaintiff retained the ability to perform the full range of sedentary work. The ALJ found that Plaintiff retained the ability to lift and/or carry 10 pounds occasionally and less than ten pounds frequently and that, in an 8-hour day, Plaintiff can stand and/or walk for 2 hours and sit for 6 hours. The ALJ found that Plaintiff can never climb ladders, ropes, or scaffolds but can occasionally climb ramps and stairs, kneel, crouch and crawl. *See id.* at 22-23; 20 C.F.R. § 404.967(c); SSR 83-10, 1983 WL 31251, at *6 (Jan. 31, 1983).

In making his RFC determination, the ALJ discussed the following objective medical evidence concerning Plaintiff's congestive heart failure:

The ALJ noted that prior to the alleged onset date, Plaintiff went for a follow up on congestive heart failure, history of atypical chest pain, and morbid obesity. She was given as assessment of congestive heart failure, chronic, systolic, New York Heart Association functional class III; atypical chest pain, noncardiac; and status post myocardial perfusion and images that did not demonstrate any problem. *See* Dkt. No. 11-1 at 23.

On February 29, 2016, Plaintiff was treated by Salma Mazhar, M.D. for symptoms of pneumonia. Dr. Mazhar reported that Plaintiff's lungs had diminshed air

movement and expiratory wheezing, but she had no rales, crackles, or rhonchi. Plaintiff had regular heart rate and rhythm with normal S1 and S2. Dr. Mazher diagnosed Plaintiff with cough. *See id.* at 24.

On March 12, 2016, Plaintiff went to the emergency department at Dallas Regional Medical Center with complaints of bilateral leg pain, right leg worsening with tingling, and numbness of the right foot. Physician notes indicated that she had regular heart rate and rhythm with normal S1 and S2, and had no gallops, murmurs, or rubs. She was diagnosed with leg pain. *See id.*

On March 22, 2016, Plaintiff had a follow-up at Dallas Medical Physician Group on her history of congestive heart failure and morbid obesity. Her physical exam was normal, and she was given as assessment of palpitations and chronic diastolic congestive heart failure. *See id.*

On January 19, 2017, Plaintiff was admitted at Parkland Health & Hospital System with complaints of congestive heart failure exacerbation. She had regular heart rate and rhythm with normal heart sounds. There was no gallop, murmur, or friction rub. Her chest was clear and had no wheezes or rales but had diminished sounds at the bases and very shallow breaths. An echocardiogram revealed severely reduced LVEF 20% with global hypokinesis. The right ventricular systolic function was moderately reduced. Plaintiff was discharged on January 22, 2017 with a diagnosis of shortness or breath, acute on chronic systolic congestive heart failure, and morbid obesity. *See id.*

On February 2, 2017, Plaintiff went to Southeast Adults at Parkland Health & Hospital System to establish care. She was diagnosed with congestive heart failure exacerbation. *See id.*

On April 12, 2017, Plaintiff went to Southeast Adults at Parkland Health & Hospital System with complaints of hypertension and medication management. Notes indicate that she had no respiratory distress. She had regular heart rate and rhythm. She exhibited no edema. She was given an assessment of acute chronic systolic congestive heart failure and anxiety. *See id.*

On May 8, 2017, Plaintiff was seen at a cardiovascular disease clinic for an evaluation of heart failure. Her chest was clear with no wheezes, rales, or rhonchi. An MR cardiac revealed dilated left atrium and left ventricle with severely reduced left ventricular systolic function, VLEV 22%, and global hypokinesia; moderately reduced right ventricular systolic function, FVEF 36%; and small pericardial effusion. Plaintiff was given an assessment of acute chronic systolic congestive heart failure, NYHA class 2-3, profile; essential hypertension; morbid obesity; and BMI 60.0-69.9. *See id.*

On August 30, 2017, Plaintiff went to Parkland Heart Failure/Heart Transplant Clinic for a follow-up visit. She had regular heart rate and rhythm with normal S1 and S2. She was given an impression of chronic systolic heart failure, stage C; NICM; morbid obesity; history of depression; and microcytosis. *See id.*

On October 11, 2017, Plaintiff returned to Parkland Heart Failure/Heart Transplant Clinic with complaints of congestive heart failure, hypertension, and dizziness. Her physical examination was normal. She was given an impression of

-12-

ongoing dizziness/vertigo; chronic systolic/diastolic heart failure; left knee pain; and hypertension. *See id.*

The ALJ found that the intensity of Plaintiff's symptoms and the extent of the alleged functional limitations was not supported by the objective medical evidence. The ALJ explained that a treating source diagnosed Plaintiff with shortness of breath, acute on chronic systolic congestive heart failure, morbid obesity, and left knee pain but found no objective information to substantiate her claim of limiting pain. The ALJ further explained that an MR cardiac revealed dilated left atrium and left ventricle with severely reduced left ventricular systolic function, LVEF 22% and global hypokinesia, and moderately reduced right ventricular systolic function, RVEF 36%. Chest x-rays revealed cardiomegaly with borderline failure. And an ECG was normal. The ALJ observed that there are no treatment notes or reports of medical sources to document any significant muscle weakness or atrophy and no evidence of any motor, reflex, sensory, or neurological deficits. The record also reflects no recommendations for treatment such as physical therapy, injections, or surgical intervention. *See id.* at 26.

The undersigned finds that the ALJ considered objective evidence of Plaintiff's congestive heart disease in making his RFC determination and concludes that the ALJ's RFC is supported by substantial evidence.

## Recommendation

The Court should affirm the hearing decision in all respects.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: January 29, 2020

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE